SALT LAKE & UTAH R. CORPORATION et al. v. PUBLIC SERVICE COMMISSION OF UTAH et al.

No. 6676. Decided June 16, 1944. (149 P. 2d 647.)

See 42 C. J. Motor Vehicles, sec. 154. Granting or refusing of certificate of necessity and convenience to motor carrier, note, 67 A. L. R. 957. See, also, 37 Am. Jur. 529.

*Judd, Ray, Quinney & Nebeker, Farnsworth & Van Cott,* and *S. N. Cornwall,* all of Salt Lake City, for plaintiffs.

*Grover A. Giles,* Atty. Gen., *Clinton D. Vernon,* of Logan, and *Beverly S. Clendenin,* of Salt Lake City for defendants.

WADE, Justice.

Certiorari by petitioners to review a decision of the Public Service Commission granting an amendment to a certificate of convenience and necessity of the Carbon Freight Line, Inc., whereby it is allowed to operate as a common motor carrier of property between Salt Lake City and Spanish Fork, serving all intermediate points via Highway No. 91; and Between Pleasant Grove and Provo via Highway Utah No. 114, serving the opposite point of Provo Airport via

Highway Utah No. 114. The certificate of convenience and necessity held by the Carbon Freight Line, Inc., and to which the amendment was granted, allows it to operate as a common motor carrier of freight from Salt Lake City by way of Provo and Springville to points east of Thistle, Utah, and ending at Price, Utah.

The protestants before the Public Service Commission were the Salt Lake & Utah Railroad Corporation, the Railway Express Agency, the Union Pacific Railroad Co., the Denver & Rio Grande Western Railroad Co. and the Utah Central Truck Line. The petitioners herein are the Salt Lake & Utah Railroad Corporation, the Denver & Rio Grande Western Railroad Co. and its trustees, and the Utah Central Truck Line. The latter is a common motor carrier of freight, the others are railroads. Due to the war in which we are now engaged the railroads are restricted in the handling of less than carload lots to a minimum of 10 tons. When the minimum cannot be obtained the railroads are required to divert the merchandise to other forms of transportation. This has placed a greater burden on the truck lines. The Utah Central Truck Line was the only common motor carrier of property which served the public in the territory in question. The interstate motor carriers which serve this district do so only under contract with shippers.

Under 76-6-16 U. C. A. 1943, which provides that "*   *   * The findings and conclusions of the commission on questions of fact shall be final and shall not be subject to review *   *   *" this court has many times said that it is limited in its review of a decision of the commission to ascertain whether the commission had proceeded according to law and whether it had sufficient substantial evidence before it upon which to base its findings. Only in the event that it is apparent from the record that there was not sufficent substantial evidence before the commmission and that its order was arbitary, capricious or unreasonable, will this court set aside its decision. *Utah Light & Traction Co.* v. *Public Service Commission*, 101 Utah 99, 118 P. 2d 683; *Mulcahy et al.* v. *Public Service Commission et al.*,

101 Utah 245, 117 P. 2d 298; *Salt Lake City et al.* v. *Utah Light & Traction Co.*, 52 Utah 210, 173 P. 556, 3 A. L. R. 715; *Union Pacific Railroad Co.* v. *Public Service Commission,,* 103 Utah 459, 135 P. 2d 915.

There was evidence presented to the commission by eight shippers and receivers of commodities, ranging from steel pipes and plumbing fixtures to cheese and chocolates, that the transportation service furnished by common carrier truck line into the territory in question was inadequate and unsatisfactory. They testified that their needs could best be served by motor carrier service because that provided a store door delivery which was an essential service for the types of products they handled, both from their viewpoint and that of the consignees. Because the Utah Central Truck Line did not furnish either adequate or satisfactory service some of the shippers had been forced to use their own trucks, which they would not do, if an adequate service were provided. Perishable commodities which had been consigned via Utah Central Truck Line had been allowed to stand at the dock of that company without delivery to consignees until they had spoiled. There were also great delays in the delivery of non-perishable commodities with resultant inconvenience and loss to consignees. The service was so poor that some consignees were compelled to send their own men and trucks to the docks of the company, where these men would have to dig out their shipments from the conglomeration assembled there.

There has been a great increase in the population of the territory sought to be served by the Carbon Freight Line. A substantial part of this was due to war industries, of which the Geneva Steel Plant is an example. There has also been a major boom in the building of homes. A great part of this was due to the location of the war industries. At the time of the hearing before the commission the building of houses was nearing completion. However, there was testimony that the Geneva Steel Plant would likely remain in operation after the war and would need motor carrier service. The shippers of perishable food products testified

that their need for motor carrier transportation after the war would normally be greater because the war has caused a curtailment in the manufacture of their products due to rationing of materials needed.

It is the petitioners' contention that the commission was arbitrary and capricious in granting the amendment to the certificate of convenience and necessity sought by the Carbon Freight Line, because there was evidence that in normal times there had been sufficient and adequate rail and common motor carrier transportation to satisfy the needs of the community, and that the rail transportation is as satisfactory as possible under war conditions. It may be that if the grant of a certificate of necessity and convenience had been made to another railroad company, that under the facts of this case the order of the commission might have been arbitary and capricious. But the grant was not made to another railroad line, but to a motor carrier, which gives a different kind of service to the public. As we have said in the case of the *Union Pacific Railroad Co.* v. *Public Service Commission*, 103 Utah 459, 135 P. 2d 915, at page 918.

"An adequate rail service may not and cannot always afford an adequate general transportation service."

As to the inadequacy of the motor carrier service being merely a result of the war and the greater burdens placed upon it because of this, there was evidence that other motor carrier service in communities similarly affected by the war was satisfactory. From this the commission could reasonably conclude that the inadequacy and insufficiency of the service was not due solely to war conditions.

We are of the opinion that the commission did not act arbitrarily or capriciously and that it had sufficient substantial evidence before it to find, as it did, that there was need for extensive motor carrier service to shippers, and that for sometime this need had not been promptly, adequately and efficiently furnished; that this need would continue because of the great increase in population in the territory sought to be served, and that a great

portion of this population will in all probability remain, even after the war.

Whether or not the existing common motor carrier should have been given a further opportunity to furnish the required services before allowing a competing motor carrier to enter the field is a matter of policy which is entirely within the province of the Public Service Commission, especially where there was no evidence that the additional competition would so impair the revenues of the Utah Central Truck Line as to impair its ability to serve the public. It is the public good and convenience which is the yardstick to be used in determining the advisability of granting or denying a certificate of necessity and convenience. *Mulcahy* v. *Public Service Commission*, 101 Utah 245, 117 P. 2d 298; *Utah Light & Traction Co.* v. *Public Service Commission*, 101 Utah 99, 118 P. 2d 683.

The order of the Public Service Commission is affirmed.

WOLFE, C. J., LARSON and McDONOUGH, JJ., and ABE W. TURNER, District Judge, concur.

MOFFAT, J., deceased.